UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MILTON JOSEPH TAYLOR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 03-2134 (EGS) |
| U.S. PROBATION OFFICE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on a motion to dismiss filed on behalf of defendants United States Probation Office and Anthony Hill,[1] and plaintiff's "Motion for Court to Serve Additional Defendants in this Case." The Court will grant the former, deny the latter, and dismiss this action.

I.  BACKGROUND

Notwithstanding the length of plaintiff's Amended Complaint, the pleading utterly fails to set forth in any organized way the events giving rise to this action.[2] In order to understand the background of this case, the Court relies not only on the papers filed in the instant civil action,

---

[1] Service of process was not effected on the third defendant, M.L. Brown, Warden of the D.C. Jail, named in the original complaint. *See* Dkt. #13 (Process Receipt and Return). No pleading or motion has been filed on Warden Brown's behalf.

[2] The Court will grant "Plaintiff's First Motion to Amend and Supplement His Pleading and Advised This Honorable Court to Grant Fast Relief" [Dkt. #8]. For convenience, the Court will refer to this document as "Amd. Compl."

1

but also the record of plaintiff's criminal case, United States v. Taylor, Crim. No. 97-35-01 (PLF), and the government's opposition to a prior habeas petition, Taylor v. Dep't of Corrections, Civ. No. 04-1288 (JR). For convenience, the Court will refer to filings in the criminal case by docket number ("Cr. Dkt. #") or docket entry date ("Cr. Dkt. Entry"), and to the government's Opposition to Petitioner's Petition for Writ of Habeas Corpus as "Gov't Opp."

Plaintiff, who had been charged with various offenses stemming from his participation in a counterfeiting and money laundering scheme, entered a guilty plea in this court on May 19, 1997 to one count of possessing stolen mail. *See* Crim. Dkt. Entry 5/19/97. On November 13, 1997, Judge Friedman imposed a sentence of 27 months' incarceration followed by a three-year term of supervised release. Crim. Dkt. Entry 11/13/97. In addition, plaintiff was to pay a special assessment of $50 and restitution of $5,000. *Id.* The supervised release term began on October 29, 1999. *See* Gov't Opp., Ex. A (February 9, 2001 Violation Report).

Plaintiff's probation officer, Mr. Hill, notified Judge Friedman of alleged violations of the terms of supervision on two occasions. Results from urinalysis reflected plaintiff's use of codeine and morphine. Gov't Opp., Ex. A. Due to plaintiff's voluntary participation in a detoxification program and drug counseling, Mr. Hill did not recommend that the Court take any further action. *Id.* Mr. Hill requested a hearing, however, to address plaintiff's subsequent failures to report for meetings or scheduled appointments, to report for drug counseling (resulting in his expulsion from a drug treatment program), to make restitution payments, and to report for urinalysis. *Id.*, Ex. B (Request for Course of Action), Ex. C (Request for Course of Action (Statement of Additional Alleged Violations of Supervised Release)). On June 15, 2001, Judge Friedman revoked supervised release, ordered plaintiff to serve a sixth-month term at the Hope

Village Halfway House, and extended the supervised release term for a period of 18 months.[3] Compl., Attach. (Judgment in a Criminal Case, Case No. CR 97-35-01, signed on June 19, 2001). Plaintiff was to surrender himself voluntarily to Hope Village when space became available. *Id.*

Plaintiff never did report to Hope Village. On July 30, 2001, plaintiff was arrested in the District of Columbia for distribution of heroin. *See* Amd. Compl., Ex. 3 (Judgment and Commitment/Probation Order, Case No. F-4745-01); Gov't Opp., Ex. D (same). The Superior Court evidently granted plaintiff work release pending trial, and ordered his placement at another halfway house on August 3, 2001.[4] Amd. Compl. at 2 & Ex. 2 (Pretrial/Presentence Work

---

[3] This provision was interpreted to mean that plaintiff would serve a term of 18 months on supervised release beginning on his release from Hope Village after having served the six-month term imposed as a sanction for violations of the terms of his supervised release. *See* Cr. Dkt. #206 (Report and Recommendations) at 3. Magistrate Judge Kay, to whom the matter was referred, found:

> Because of his arrest and detention resulting from the drug charges in the Superior Court, Mr. Taylor did not enter the Hope Village Halfway House. However, the Bureau of Prisons gave Mr. Taylor six months credit from the date of his incarceration on July 30, 2001, arising out of the Superior Court charges, as time served under Judge Friedman's sentence of six months imprisonment imposed following revocation of Defendant's supervised release on June 15, 2001.

*Id.* at 3. Judge Kessler, to whom the matter had been reassigned, adopted Magistrate Judge Kay's recommendation. *Id.* at 4. BOP's decision to award credit towards the sentence plaintiff would have served at Hope Village was allowed to stand. The federal supervised release term ended on December 3, 2003.

[4] Apparently the Superior Court was not aware of the then-pending six-month sentence imposed by this district court, and erroneously released plaintiff into third-party custody. Crim. Dkt. #158 (October 18, 2001 Order denying motion for custody review). "When the Superior Court learned of his pending sentence . . . the Warrant Squad of the United States Marshal's [sic] Service was notified, and [plaintiff] was arrested and detained in D.C. Jail." *Id.* at 2.

Release Order (Modified), Crim. No. F-4745-01 dated October 12, 2001); Cr. Dkt. #158 (October 18, 2001 Order denying motion for custody review); Plaintiff Opposition Motion to Strike the Government's Motion to Dismiss his Civil Lawsuit and Grant Him a Jury Trial ("Pl.'s Opp'n"), Ex. (Docket, Crim. No. F-4745-01) at 3.  Plaintiff promptly reported his arrest to his probation officer, Anthony Hill.  Amd. Compl. at 2.  On August 15, 2001, plaintiff was transferred from the halfway house to the D.C. Jail.[5]  *Id.*  According to plaintiff, he was released from the D.C. Jail on January 8, 2002.[6]  *Id.*

The incarceration portion of plaintiff's federal sentence expired on December 14, 2001, while plaintiff was detained at the D.C. Jail.  *See* Amd. Compl., Ex. 4 (Response to Inmate Request to Staff Member).  He remained at the D.C. Jail awaiting sentencing in his Superior Court case, F-4745-01.  *Id.*

On April 25, 2002, before Judge Wendell Gardner, Jr. of the Superior Court, plaintiff entered a guilty plea to one count of distribution of heroin.  *See* Gov't Opp. at 8; Pl.'s Opp'n, Ex. at 3.  On June 14, 2002, Judge Gardner sentenced plaintiff to five years' imprisonment, suspended execution of the sentence, and instead imposed a two-year term of probation followed by a five-year term of supervised release.  *Id.*; Pl.'s Opp'n, Ex. at 3; Gov't Opp., Ex. J (Judgment

---

[5] The authority for plaintiff's August 15, 2001 transfer and the means by which he was transferred are not clear.  Although the U.S. Marshals Service lodged a detainer with respect to the unexpired federal sentence, *see* Amd. Compl., Ex. 1 (Detainer dated August 14, 2001 regarding CR#97-35-01), it is not clear that the U.S. Marshals effected the August 15, 2001 transfer.  *See Taylor v. United States Probation Office*, 431 F.3d 426, 428 (D.C. Cir. 2005).

[6] It is unclear from the record whether plaintiff remained at the D.C. Jail until January 8, 2002, or until June 18, 2002.  Plaintiff may have been transferred from the D.C. Jail to a halfway house in January 2002, and released from the halfway house to probation on June 18, 2002.  *See, e.g.,* Amd. Compl., Ex. 4-5 (Response to Inmate Request to Staff Member signed by V.P. Adams, Warden, FCI Petersburg, on January 13, 2005); Compl. at 2.

and Commitment/Probation Order, Crim. No. F-4745-01).

Plaintiff's supervision officer reported to Judge Gardner plaintiff's repeated failures to report for meetings with the supervision officer, to maintain regular employment, to notify the officer of his change of address, to permit a home inspection, to cooperate with a psychological treatment, and to submit to urinalysis. Gov't Opp., Ex. K (September 9, 2003 Violation Report). Judge Gardner took no action at that time, in part because plaintiff was under federal supervision also. *See id.*, Ex. L (February 20, 2004 Violation Report). For subsequent failures to report for meetings with his supervision officer and to submit to urinalysis, Judge Gardner revoked probation on May 7, 2004. *Id.*, Ex. O (Judgment and Commitment Order, Crim. No. F-4745-01); Amd. Compl., Ex. 3 (same). Judge Gardner then imposed a term of 20 months' incarceration (with credit for 187 days served from December 14, 2001 through June 18, 2002) followed by a two-year term of supervised release. Amd. Compl., Ex. 6-7 (Sentencing Monitoring Computation Data as of 02-15-2005). Plaintiff served some portion of his incarceration at the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"). *See* Gov't Opp., Ex. H (August 12, 2004 Memorandum from M.J. Mooney, Probation Officer, to Magistrate Judge Kay). He was released on June 17, 2005. Amd. Compl. at 7.

Plaintiff alleges that defendants have violated both his constitutional and statutory rights. *See* Amd. Compl. at 24. He brings this civil rights action under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and demands monetary damages from "John and Jane [Does] in their official capacity of 75,000 dollars and

5,000 dollars in their personal capacity."[7]  *Id*.  In addition, he demands "33 million dollars" from the Federal Bureau of Prisons, and "40,000 dollars for all defendants in their personal capacity." *Id*.

Plaintiff purports to amend his complaint by adding the Bureau of Prisons as a defendant, and to add "every person that are in charge of the units, cell-blocks, control booths, towers, gates, Central Office personnel etc." Amd. Compl. at 24.  Evidently these individuals are named in his Motion for the Court to Serve Additional Defendants in this Case (Pl.'s Mot.").  In addition, plaintiff purports to add Mayor Williams as a party defendant, as well as five federal district judges, one Magistrate Judge, and one Superior Court judge.[8]  *Id.*

## II.  DISCUSSION

### A.  Remand from the District of Columbia Circuit

The Court construed plaintiff's original complaint as a challenge to the fact or duration of his confinement.  *Taylor v. United States Probation Office*, No. 03-2134 (D.D.C. Oct. 17, 2003) (Memorandum and Dismissal Order).  Plaintiff demanded monetary damages stemming from his allegedly unlawful confinement (which he characterized as a kidnapping) without first having

---

[7] Although plaintiff refers to the Administrative Procedure Act, *see* 5 U.S.C. § 701 *et seq.*, he does not articulate a claim under that Act.  *See* Amd. Compl. at 9.  To the extent that plaintiff purports to bring a civil action under 18 U.S.C. §§ 241, 242, 371, 1201, *see* Pl.'s Opp'n at 1, these claims fail.  There is no private right of action under a criminal statute.  *See Hunter v. District of Columbia*, 384 F.Supp.2d 257, 260 n.1 (D.D.C. 2005); *Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C. 2003).  These claims will be dismissed.

[8] Neither the original Complaint nor the Amended Complaint mentions Mayor Williams, and plaintiff's motion merely lists him as one of many prospective defendants.  The Amended Complaint fails to state a claim against Mayor Williams upon which relief can be granted, and the claims against him will be dismissed.

established that his conviction or sentence had been invalidated.  *Id.*  The Court concluded that plaintiff failed to state a claim against the Warden of the D.C. Jail under 42 U.S.C. § 1983, and against his probation officer under an equivalent cause of action under *Bivens*.  *Id.*  Relying on the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the complaint was dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *Taylor v. United States Probation Office*, No. 03-2134 (D.D.C. Oct. 17, 2003) (Memorandum and Dismissal Order).

Plaintiff appealed the dismissal, and the United States Court of Appeals for the District of Columbia reversed.  *Taylor v. United States Probation Office*, 431 F.3d 426, 431 (D.C. Cir. 2005).  According to the District of Columbia Circuit, "[t]he gravamen of Taylor's complaint is that his confinement at the [D.C. Jail] location rather than at a halfway house was unlawful, because it contravened the orders of the District Court and the Superior Court."  *Id.* at 429.  It concluded that plaintiff's complaint "lies outside of *Heck*'s ambit," such that summary dismissal was not warranted.  *Id.* at 131.

The scope of plaintiff's case dramatically is expanded with the filing of his Amended Complaint.  What began as a challenge to the *place* of plaintiff's confinement for a limited period of time is lost amid charges of conspiracy, kidnapping, involuntary servitude, vague allegations of constitutional violations, and attacks on judges who have rendered unfavorable decisions in other actions.  Notwithstanding plaintiff's success on appeal of the dismissal of his original complaint, this action will be dismissed.

### B.  The Claims Sounding in Habeas are Moot

Plaintiff alleges that the Federal Bureau of Prisons failed to award "jail credits from 7-30-01 thru 12-13-01."  Amd. Compl. at 5.  He disputes the award of good time credits and the

calculation of the 20-month sentence imposed by the Superior Court. *Id.* at 6-7. He argues that he was forced to serve 24 months, not the 20 months actually imposed, of the Superior Court sentence. *See id.* at 6-9, 10, 11. In these ways plaintiff challenges the duration of his confinement. Challenges of this nature must be brought in a habeas action. State prisoners must use a habeas corpus remedy "when they seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original); *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (finding that, even if restoration of good time credits shortened length of petitioners' confinement, suit "would still have been within the core of habeas in attacking the very duration of their physical custody itself"); *see also Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 373 (D.C. Cir. 2000) (concluding that federal prisoner's exclusive remedy is habeas "even when a non-habeas claim would have a merely probabilistic impact on the duration of custody").

      The fact that plaintiff has been released from custody, however, renders a habeas petition moot. *Lane v. Williams*, 455 U.S. 624, 631 (1982) (attack on sentences which expired during course of habeas proceedings rendered case moot); *Kimberlin v. United States Parole Comm'n*, No. 03-5017, 2004 WL 885215 at *1 (D.C. Cir. Apr. 22, 2004) (finding moot a habeas petition challenging Parole Commission's decisions to revoke parole and to delay reparole because petitioner had been "released from the confinement imposed as a result of those decisions"); *Thorndyke v. Washington*, 224 F.Supp.2d 72, 74 (D.D.C. 2002) (petitioner's claim of unlawful custody before his revocation hearing and findings of fact on charge of parole violation found moot after issuance of corrected Notice of Action). Accordingly, all claims sounding in habeas

will be dismissed.

*C.  Plaintiff's Claims for Monetary Damages are Barred*

1.  <u>The Supreme Court's Holding in *Heck v. Humphrey* Applies</u>

Plaintiff contends that his incarceration constituted a "KID-NAPPING."  Amd. Compl. at 1.  He repeatedly asserts that he was detained for months after the expiration of the 20-month Superior Court sentence.  *See id.* at 6-7, 11, 15.  His extended detention, he argues, came about because of conspiracies among Bureau of Prisons officials, acts of retaliation against plaintiff by Bureau of Prisons officials, miscalculation of his sentence, and due process violations in the course of disciplinary hearings at FCI Petersburg.  *See id.* at 5, 7, 11, 12.  His demand for monetary damages stemming from any allegedly illegal detention must fail.

In *Heck v. Humphrey*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. at 487); *see also White v. United States Probation Office*, 148 F.3d 1124, 1126 (D.C. Cir.1998) (per curiam) (dismissing Privacy Act suit because judgment in plaintiff's favor on challenge to legal conclusions of presentence investigation report "would necessarily imply the invalidity of his sentence, which has not been invalidated in a prior proceeding"); *Hurt v. District of Columbia Metro. Police Dep't*, No. 05-1439 (JDB), 2006 WL 1371678, *2 (D.D.C. May 17, 2006) (dismissing for failure to state a claim upon which relief can be granted a claim against police officer whose arrest report was basis of parole revocation decision because success on claim's merits "would

necessarily invalidate the parole revocation decision").

In this case, a decision in plaintiff's favor necessarily implies that his sentence was invalid. He does not establish the invalidity of his sentence by showing that it has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. at 487. Nor could plaintiff recover damages for a constitutional violation in connection with the computation of his sentence. *White v. Bowie*, 194 F.3d 175 (D.C. Cir. 1999) (per curiam) (table) (without showing that conviction had been invalidated, plaintiff could not seek damages for alleged constitutional violations regarding sentence computation).

Any civil rights action plaintiff brings against Mr. Hill or any other federal official in his individual capacity under *Bivens* stemming from the fact or duration of his confinement also must fail. *Heck* applies to civil rights claims against individuals in *Bivens* actions also. *Williams v. Hill*, 74 F.3d 1339, 1340-41 (D.C. Cir. 1996) (per curiam) (applying *Heck* rationale so that plaintiff "cannot recover damages for the actions of those who allegedly brought about his [criminal] convictions" where plaintiff was found guilty and verdicts had not been overturned). Plaintiff does not satisfy the "favorable termination" prerequisite set forth in *Heck*, and these claims will be dismissed.

Similarly, plaintiff's retaliation and conspiracy claims against the Warden of FCI Petersburg and other staff there, including a Disciplinary Hearing Officer must be dismissed.[9]

---

[9] Furthermore the Amended Complaint lacks adequate factual allegations supporting his conspiracy claims. Plaintiff alleges the existence of two conspiracies. He alleges
(continued...)

Plaintiff alleges that defendants Adams and Roush, among others, "retaliated against [him] by not awarding him jail credits." Amd. Compl. at 5. Further, he alleges that defendants Adams, Hise, Braggs, Butts, Kiddy, Stevens, Spenser, Smith and Prince conspired against him by producing "fraudulent incident reports" which caused plaintiff "to remain in 'DISCIPLINARY SEGREGATION' on three occasions in 2004 and 2005. *Id.* at 12. These claims go to the fact or duration of plaintiff's confinement, and thus are barred under *Heck*.

2. Sovereign Immunity Bars Claims against Federal Government

Even if plaintiff's claims were not barred under *Heck*, the doctrine of sovereign immunity bars his claims for monetary damages against federal government entities and federal officials sued in their official capacities. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal

---

[9](...continued)
that Mr. Hill "conspired with Mrs. Resita Barber to signed [sic] a U.S. Marshal Detainer filed on August 14, 2001 to get Mr. Taylor removed to the D.C. Jail for a previously unserved '6 MONTHS HALFWAY HOUSE' sentence." Amd. Compl. at 4. Secondly, he alleges that officials at FCI Petersburg conspired to falsify institutional infraction reports resulting in plaintiff's placement "in 'SEGREGATION CONFINEMENT' and to had 'KID-NAPPED' him beyond his 20 months state sentence." *Id.* at 7; *see id*. at 12. In neither instance does the pleading specify in detail the factual basis necessary to enable defendants to intelligently prepare a defense. Accordingly, the Amended Complaint is not sufficient to sustain a claim of governmental conspiracy to deprive a plaintiff of his constitutional rights. *See Meyer v. Reno*, 911 F.Supp. 11, 15 (D.D.C. 1996); *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987).

Insofar as plaintiff alleges a conspiracy to violate his civil rights, the Court presumes that plaintiff brings his conspiracy claim pursuant to 42 U.S.C. § 1985(3). In order to prevail in a cause of action under 42 U.S.C. § 1985(3), plaintiff must demonstrate "a conspiracy motivated by some racial, or perhaps class based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Nothing in his Amended Complaint alleges or suggests a discriminatory motive behind defendants' actions.

Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (concluding that sovereign immunity "bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government"); *see Kline v. Republic of El Salvador*, 603 F.Supp. 1313, 1317 (D.D.C. 1985) (Federal Tort Claims Act does not waive immunity for constitutional tort violations allegedly committed by government employees). "[T]he United States simply has not rendered itself liable . . . for constitutional tort claims." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. at 478 (concluding that constitutional tort claim brought under Federal Tort Claims Act not cognizable). His claims against the Federal Bureau of Prisons and against the federal government officials or employees in their official capacities will be dismissed.

3. <u>Federal and Superior Court Judges are Absolutely Immune</u>

Among the defendants listed in plaintiff's "Motion for the Court to Serve Additional Defendants in this Case" are judges who either presided over his criminal cases, dismissed prior civil actions filed in this district or the United States District Court for the Eastern District of Virginia, or denied prior petitions for writs of habeas corpus. *See* Pl.'s Mot. at 3-4. Plaintiff alleges that these judges have exceeded their authority by imposing sentences beyond the applicable guideline range, *see* Amd. Compl. at 15, denied him access to the courts, *id.* at 15-17, and violated ethical canons, *id.* at 20. His dissatisfaction with their rulings does not constitute a viable civil rights claim. These defendants enjoy absolute immunity from liability for damages for acts committed within their judicial jurisdiction. *See Mirales v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Pierson v. Ray*, 386 U.S. 547, 553(1967); *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872).

*D.  Plaintiff Has No Right to Confinement at a Halfway House*

The District of Columbia Circuit frames plaintiff's initial complaint as a challenge to the location of plaintiff's confinement, at the D.C. Jail rather than at a halfway house. *See Taylor v. United States Probation Office*, 409 F.3d at 429.  This claim lives on in plaintiff's amended pleading.  *See* Amd. Compl. at 14.

The "control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General," 18 U.S.C. § 4001(b)(1), and the Federal Bureau of Prisons manages and regulates "all Federal penal and correctional institutions."  18 U.S.C. § 4042(a)(1). An offender sentenced by the Superior Court of the District of Columbia to a term of imprisonment for more than 1 year serves that term "in some suitable jail, or penitentiary, or in the Reformatory of the District of Columbia . . . as the Attorney General shall from time to time designate."  D.C. Code § 24-201.01.  The offender is "designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons, for such term of imprisonment as the court may direct."  D.C. Code § 24-101(a).

A prisoner has no protected interest in a designation to any particular prison, or to confinement at a facility in any particular state. *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (concluding that interstate prison transfer "does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself"); *Pitts v. Meese*, 684 F.Supp. 303, 315 D.D.C. 1987) (finding no justifiable expectation that female inmates would be incarcerated in a facility in or near the District of Columbia), *aff'd sub nom. Pitts v. Thornburgh*, 866 F.2d 1450 (D.C. Cir. 1989).

The Federal Bureau of Prisons "may at any time . . . direct the transfer of a prisoner from

one penal or correctional facility to another." 18 U.S.C. § 3621(b). The decision to house a prisoner in a particular place is left to prison managers. Unless a prisoner is subjected to extraordinary treatment, and plaintiff makes no such showing here, the effect of those day-to-day decisions on prisoners are ordinary consequences of confinement for having committed a crime. *Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Franklin v. District of Columbia*, 163 F.3d 625, 635 (D.C. Cir. 1998); *Smith v. United States*, 277 F.Supp.2d 100, 113 (D.D.C. 2003) (finding no liberty interest at stake in change in prisoner's custodial status from a halfway house to a prison).

### III. CONCLUSION

Plaintiff's challenges to the fact or duration of his confinement sound in habeas, and are moot due to his release from confinement. Absent a showing that his conviction or sentence has been invalidated, he is not entitled to an award of damages on his § 1983 and *Bivens* claims because a judgment in his favor necessarily would imply the invalidity of his conviction or sentence. The doctrine of sovereign immunity bars his claims for damages against the Federal Bureau of Prisons and against federal government officials or employees in their official capacities. Judicial immunity protects the federal district judges, federal magistrate judge, and the Superior Court judge named as defendants to this action. Plaintiff fails to state a claim against Mayor Williams, and the Amended Complaint does not set forth adequately a factual basis for his conspiracy claims. For the reasons stated herein, the motion to dismiss filed on behalf of the United States Probation Office and Anthony Hill will be granted. Plaintiff's Motion for the Court to Serve Additional Defendants in this Case, and his other pending motions, will be denied.

An Order consistent with this Memorandum Opinion will be issued separately on this

same date.

        Signed:        EMMET G. SULLIVAN
                              United States District Judge

        Dated:        September 29, 2006